Reese, J.
delivered the opinion of the court.
We learn from the record that complainant and defendant, prior to the year 1823, had been partners in a mercantile concern. In that year a dissolution took place. The business had been prosperous and profitable, and the defendant, by the contract of dissolution, received for his share of the profits ten thousand dollars in cash notes due to the firm; and as the complainant proposed to continue in business, it was agreed, that the defendant should permit his share of the capital advanced, eight thousand dollars, to remain in the hands of the complainant so long as he might wish to retain it, provided the defendant deemed it secure, on the terms of the complainant paying to the defendant interest at the rate of ten per centum per annum. In pursuance of this agreement, at the date referred to, complainant executed to defendant his note for eight thousand dollars, due twelve months after date, and, also, his note for eight hundred dollars, due at the same rime, to secure the interest at the rate stipulated. At the end of the year the note for the eight thousand dollars was renewed, the note for the eight hundred paid, and a new note given for eight hundred dollars to secure the payment of the stipulated interest upon the eight thousand dollar note; and so on, from year to year, these notes of eight thousand and eight' hundred dollars were concurrently given; the larger note being uniformly renewed, and the smaller note uniformly paid and taken up, and another of the same amount and for the same purpose executed, till the 4th of March, 1833, *668 when complainant paid twenty-two hundred dollars of what was considered principal; after which, notes for $5,800, and $580 interest were given, and the renewal of the one and the payment and re-execution of the other continued with the same uniformity as before, till the 12th January, 1839, when complainant paid the interest note falling due the 4th of March as he avers, and $775 of what was deemed principal, and on the 24th April, 1840, he paid up the principal and interest in full, by conveyance of real estate, estimated by the parties at five thousand one hundred dollars. In less than a year after this settlement, to wit, on the 27th February, 1841, this bill was filed. Its object is, to have the excess of interest beyond the legal rate refunded.
The facts above set forth are all stated in the answer. The defendant, however, relies and insists upon the statute of limitations of three and six years, accordingly as the court may suppose one or the other to apply. The decree below was in favor of the complainant.
On the one side it has been contended that this was a continuous contract, from 1823, till 1840, the annual payments and securities being but steps and processes in that contract, and made in pursuance thereto, and that the statute would not begin to run until, by application of the annual excess of interest to the priucipal as payment, the principal itself should be exhausted; and the time at which this took place being in 1837, something less than six years of the filing of the bill, that the statute constitutes no bar in the case.
On the other side it has been urged with much zeal and ingenuity, that the statute does apply; that an action at law might have been annually brought for the excess of interest over six per cent., so soon as the same might have been paid, in which action, the principal note having been renewed for twelve months, the court of law would not have turned the plaintiff round by applying the excess of usury as a payment to the principal. We doubt whether this would have been so. For the court at law would not have ascertained that there had been an excess of interest but by 'proof' that the eight hundred dollar note taken up and paid, was intended for the concurrent in *669 terest upon the eight thousand dollar note renewed, and if a credit of the excess had been applied as a payment to that note, there would have been no money in the hands of the defendant, which ex equo et bono, he might not have retained. But be this as it may, such technical right to maintain the action at law, if it existed on the one hand, or supposed technical difficulty in defending such action on the other, can have no material bearing on the question before us. As a court of chancery we cannot but see that all these concurrent notes, all these payments and renewals, incorporate themselves into one continuing contract and transaction. And the well settled rule in chancery in such cases, is to consider and apply the excess of usurious interest to the payment of the principal sum due; and until, therefore, the principal sum, by such payment, be exhausted, the borrower is not entitled in equity to recover any thing back from the lender. This did not take place, as has been said, in the case before us, until the year 1837, and within less than six years before the filing of this bill. The statute, therefore, creates no bar.
As to the abatement claimed by the defendant, on the ground that the notes for interest were, to some extent, paid in goods and in common currency, of less value than the nominal amount at which they were received, and that the real estate taken in payment, on final settlement, was not worth the estimated amount, we are of opinion that the abatement claimed cannot be allowed. The prices fixed upon property by parties themselves, when fairly done, cannot be changed or controlled by courts of justice. If, indeed, such prices be fraudulent or co-lorable, to evade usury, a different rule would exist. But here, neither the general complexion of the transaction, the paticular facts of the case, or the condition and relation of the parties to each other, will justify such inference. Upon the whole the decree of the chancellor will be affirmed.